IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS HERRERA,<br><br>Defendant.<br>                                                                / | No. CR 08-0730 WHA<br><br>**ORDER DENYING DEFENDANT LUIS HERRERA'S REQUEST FOR RECONSIDERATION OF PRIOR ORDERS PHASING OUT LEARNED COUNSEL JAMES THOMSON** |

When the government elected against seeking the death penalty for anyone in this large gang prosecution, the Court began phasing out one of the two counsel previously appointed for each of the six death-eligible defendants, each phase-out plan being tailored to the circumstances of each defendant. A phase-out was and remains needed not only because it would be unfair to give some defendants in this large gang case two lawyers but others only one, at least without a good reason, and because the disparity might lead to jury speculation. The phase-outs were done via confidential orders on the CJA docket.

Defendant Luis Herrera was one such defendant with two counsel. As required by statute, one of the two was "learned in the law applicable to capital cases." 18 U.S.C. 3005. For him, as with most of the six previously death-eligible defendants, the Court generally elected to phase out *learned* counsel. Since then, two have pled out, so that of the four remaining, three will go forward without learned counsel. As for defendant Herrera, co-counsel were requested by an order dated September 17 to meet and confer on an orderly phase-out of learned counsel.

Instead, counsel requested that both remain in the case. This was denied. His phase-out period, however, was extended by an additional two months to make the transition to one attorney even smoother. Of course, non-death penalty related support staff (paralegal, investigator, consultants) were uniformly continued without interruption to work with remaining counsel. Again, all of this was done on the confidential CJA docket.

Six weeks then passed. The instant motion for reconsideration was then filed on the public docket insisting that both counsel stay on the case but that if only one would remain it should be learned counsel. Through the deputy clerk, the Court inquired whether the motion was meant to be on the public docket rather than the confidential CJA docket. Moving counsel insisted that it was intended to be public and eventually made clear that "a constitutional issue" was posed and evidently believed that a public airing would better tee it up.

The learned counsel is Attorney James Thomson, appointed September 27, 2009 (Dkt. Nos. 4, 89). His co-counsel is Attorney Josh Cohen, appointed April 23, 2010. (Although the criminal action commenced in 2008, defendant Herrera was indicted only in late 2009.) Of course, each is experienced and qualified to provide competent representation for the remainder of the case.

A hearing was held on November 23. Because it was a public proceeding, government counsel and members of the public attended (save for an *in camera* session to hear defendant's views). Government counsel made a point of staying out of the argument.

One of the main defense points made at the public hearing was that the accused, Luis Herrera, prefers to keep both counsel but if he can have only one, he prefers to keep learned counsel Attorney James Thomson. This is set forth in a public declaration signed by the accused (Dkt. No. 2558-1). The declaration's main point is that Attorney Thomson has been in the case longer than Attorney Cohen and, therefore, the accused has had a longer and better relationship with Attorney Thomson than with Attorney Cohen. Also, the declaration states that Attorney Thomson was critical in getting the death penalty taken off the table. Defendant states he is also favorably impressed with Attorney Cohen but has had less opportunity to bond with him.

2

\*         \*         \*

Under the Criminal Justice Act, 18 U.S.C. 3006A, we must appoint and pay from public funds competent counsel for all indigents charged in federal court. Counsel must provide at least the minimum standards of professional conduct guaranteed by the Sixth Amendment. That said, in addition to the qualifications of counsel and needs of the case, the Court may also take into account the cost-effectiveness of various counsel applicants and their likely burdens on finite CJA resources. As the Judicial Council of the Ninth Circuit explained in adopting a case management and budgeting policy, these considerations are important to "help ensure defense counsel receive the resources necessary to effectively represent the accused while enhancing predictability and accountability for limited CJA funds." Memorandum from Judicial Council of the Ninth Circuit to Chief District Judges and Clerks of Court (Nov. 15, 2010). In sum, the judge must always appoint effective counsel but in doing so may prefer more cost-effective applicants over less cost-effective applicants. *See generally In re Smith*, 586 F.3d 1169 (9th Cir. 2009). *Cf.* ADMIN. OFFICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY POLICY 110.20, 230.23.40 (2010).

Contrary to the instant motion, defendant has no right to two free counsel. This is no longer a capital case. A judge could allow two counsel if the trial were imminent or other circumstances demanded it but that is not true here. *United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003).

The central point of the instant motion is to keep Attorney Thomson on the case rather than Attorney Cohen. It supposes that an accused has a Sixth Amendment right, at least in these circumstances, to select which lawyer to retain and which to let go. No decision so holds. Indeed, the law is decidedly to the contrary. The Supreme Court and our court of appeals have repeatedly held that there is no constitutional right to be represented by a free court-appointed attorney of one's own choosing. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989); *United States v. Lewis*, 611 F.3d 1172, 1177 (9th Cir. 2010); *United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007).

3

There is, moreover, no Sixth Amendment right to a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13 (1982); *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008). The motion is anchored in a separate opinion by Justice William Brennan in *Morris*, not in the majority opinion in *Morris*, which majority opinion rejected the very thesis of this motion. The Act confers broad discretion on the district judge. "In the interests of justice" a district court may "substitute one appointed counsel for another at any stage of the proceedings." 18 U.S.C. 3006A(c); General Order No. 2 at 7. *See also United States v. Parker*, 469 F.3d 57, 61 (2d. Cir. 2006).

Cited by movant are a number of state court decisions that discuss the importance of considering a defendant's desire to retain counsel who has already been appointed. These decisions dealt with the *replacement* of current counsel with entirely new counsel or the denial of a defendant's request to be represented by an attorney who had previously represented him/her in related proceedings. These decisions in no way held that a defendant has a right to determine which of two lawyers will continue in a fact pattern like our own. Moreover, these decisions relied entirely or almost entirely on state law with at most a passing reference to the Sixth Amendment.

A district judge may, of course, take into account the preferences of the accused. It would be unwise, however, to cede to the accused the ultimate decision. An accused will not be as familiar as the judge to what lies ahead. The judge will be in a better position than the accused to assess the future needs of the case and the impact on the choice of counsel. Often, moreover, one of the two lawyers will have demanding and competing obligations — such as a trial in another case then pending — such that one lawyer may need to be excused. The accused should not be allowed to veto such a departure. Nonetheless, where an accused expresses a preference, the judge certainly may take the preference into account, as will be done here.

\*           \*           \*

Turning to the instant matter, the Court takes it for granted that defendant Herrera prefers Attorney Thomson over Attorney Cohen at this stage in the case. After fully considering defendant's wishes and all other information submitted, however, this order nonetheless finds that

4

Attorney Josh Cohen should remain as counsel and Attorney Thomson should be phased out, for the following reasons:

*First*, once the death penalty was taken off the table, the services of learned counsel were no longer needed. Attorney Thomson has been the learned counsel. His learned services are no longer needed in this case. The CJA billings submitted by Attorney Thomson show that a significant portion of his work in this case was directed at mitigation and/or other death penalty issues. Those issues are now moot. Thus, even though Attorney Thomson has represented the accused a few months longer than Attorney Cohen, his main assignment is now done and moot.

*Second*, as between the two attorneys, this order finds that Attorney Cohen is better suited to the professional responsibilities *remaining in the case*. The death penalty part is gone now. The tasks remaining are well suited to Attorney Cohen. He has extensive experience — including four years as an Assistant Federal Public Defender in this district — and the quality and effectiveness of his work is well-regarded. Attorney Cohen has taken an active role in the case for the last seven months and his exceptional oral and written advocacy has resulted in victories for the Herrera defense team. Removal of Attorney Cohen would necessitate significant duplication of work by Attorney Thomson to familiarize himself with the work that Attorney Cohen has accomplished to date — much of which relates to matters still pending and important to Mr. Herrera's defense. To give one example, Attorney Cohen has shown a versed familiarity with forensic and expert issues that will likely be of importance at trial and key to defending Mr. Herrera against the most serious charges against him relating to the Daly City homicide (Dkt. Nos. 1851, 1942, 2160). Attorney Cohen is also intimately familiar with the federal sentencing guidelines and non-capital sentencing practice. Attorney Thomson's skill set is predominantly capital case litigation and clemency proceedings.

Although the accused prefers Attorney Thomson, he does not doubt Attorney Cohen's ability to defend him effectively. No conflict is raised. Nor does he intimate he cannot develop a meaningful attorney-client relationship with Attorney Cohen. Instead, the declarant simply asserts that he does not "have the *same* relationship with any other lawyer [that he does with Mr. Thomson]" and he does not "believe that any other lawyer has the *same knowledge*" about

5

him and his case (Herrera Decl. ¶ 13) (emphasis added).  Of course, different attorneys can all have different but all good relationships with a client.  The Court is confident that Mr. Herrera will develop a good working relationship with Attorney Cohen and that Attorney Cohen will provide better if not equal representation compared to Attorney Thomson.

*Third*, consideration has been given to other possible reasons for adjusting the phase-out. For example, because Attorney Cohen has been in the case fewer months than Attorney Thomson, the Court has weighed the comparable opportunities of each to be ready for trial (now set for March 7, 2011).  This factor is inconclusive.  On the one hand, Attorney Thomson has been in the case a few more months but his work has been largely devoted to issues now moot.  On the other hand, Attorney Cohen has been in the case a shorter period but, in the Court's judgment, is better suited to the work that remains.  To complicate that picture, there are still too many remaining defendants (seventeen) to try them all at once so a later trial for some (possibly including Luis Herrera) will be required anyway as the lineup now stands, not to mention the yet-to-be-reached issue of severances.  This consideration is too speculative and does not warrant an adjustment.

*Fourth*, while the foregoing reasons are sufficient, these very proceedings have generated further considerations sustaining the choice.  At argument, counsel stated that the undersigned judge "does not like" Attorney Thomson and that personal animus was, in his view, driving the choice of counsel (Tr. 18).  It is sad that this charge has been made but now that it has been made it will be addressed.  The judge herein knows Attorney Thomson only through his work in this and an earlier capital case and his CJA billing practices therein.  The judge's only concerns arise via the CJA billing process, not from any personal animus, and are legitimate ones that go to the administration of justice.  Every decision made in this case, including this one, has been made solely on the merits.  Out of deference, the rest of what deserves to be said on this specific concern — which further sustains the decision herein — will be said under seal on the confidential CJA docket.  This will be done in a companion non-public memorandum opinion.

Ironically, the charge of personal animus now imposes a further consideration in favor of phasing out Attorney Thomson.  Were he to stay in the case, any subsequent conviction and/or

6

sentence would be dogged by a perception — even if unfounded — that Luis Herrera had been penalized for an improper reason. In a very similar instance, the Second Circuit held that under the Act, the perception that the trial court may be biased against CJA counsel, whether true or not, was a proper basis to substitute new CJA counsel. In *United States v. Parker*, 469 F.3d 57, 58–62 (2d Cir. 2006), the Second Circuit affirmed the district court's replacement of original CJA counsel in order to "eliminate any perception or suggestion" that ongoing CJA-related disputes with original counsel would be held against the defendant. In that case, counsel was originally retained but moved to be appointed as CJA counsel when the defendant ran out of money. The district court eventually granted the appointment. A CJA dispute arose over how much retroactive time would be compensated. The defendant proceeded to trial, was convicted and sentenced. On appeal, the case was remanded for re-sentencing. At that juncture, the district court — over the defendant's objection — replaced original counsel with completely new CJA counsel. Original counsel moved for reconsideration and appealed the denial. Original counsel also moved for the appellate court to reinstate him for the ensuing appeals. The Second Circuit held that the district court had not abused its discretion and that it had not been unreasonable to conclude that the "appearance of justice" would be best preserved via the substitution. And, the Second Circuit emphasized that there is no constitutional right to continuity of appointed counsel and that assignment of CJA counsel is "a task commended to the court."

So too here. Given the public charge (in the presence of the client) that the assigned judge dislikes one CJA counsel, however untrue it may be, isn't it better for the appearance of justice that *another* CJA attorney go forward with the case? The Court thinks so. Indeed, if a brand new CJA lawyer can be substituted, as in the Second Circuit decision, then *a fortiori*, one of two *existing* CJA counsel surely can continue on while the other is phased out. To do otherwise would risk insinuating forever into the record the suggestion that decisions were made on an improper basis and, as in the Second Circuit's view, compromises the "appearance of justice."

7

For the foregoing reasons, the motion for reconsideration is **DENIED**. The CJA order dated October 5 for the phase-out of Attorney Thomson will stand and the Court asks for the cooperation of both counsel in implementing the order.

**IT IS SO ORDERED.**

Dated: December 6, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE